AO 91 (Rev. 11/11)  Criminal Complaint (Rev. by USAO on 3/12/20)     ☐ Original     ☐ Duplicate Original

# UNITED STATES DISTRICT COURT

for the

Central District of California

| United States of America | |
|---|---|
| v. | Case No.   2:22-mj-02118-duty |
| KEVIN KEITH HARLAN, | |
| Defendant | |

LODGED
CLERK, U.S. DISTRICT COURT
5/27/2022
CENTRAL DISTRICT OF CALIFORNIA
BY: ___JB___ DEPUTY

FILED
CLERK, U.S. DISTRICT COURT
May 27, 2022
CENTRAL DISTRICT OF CALIFORNIA
BY: ___JM___ DEPUTY

## CRIMINAL COMPLAINT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date of May 22, 2022 in the county of Los Angeles in the Central District of California, the defendant violated:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. § 922(g)(1) | Felon in Possession of a Firearm |

This criminal complaint is based on these facts:

*Please see attached affidavit.*

☒ Continued on the attached sheet.

_____
Complainant's signature

RYAN J. STEARMAN, Special Agent
Printed name and title

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by telephone.

Date:   May 27, 2022            *Patricia Donahue*
                                 Judge's signature

City and state:  Los Angeles, California      Hon. Patricia Donahue, U.S. Magistrate Judge
                                              Printed name and title

AUSA:___JMC x6520_____

**AFFIDAVIT**

I, Ryan J. Stearman, being duly sworn, declare and state as follows:

## I.   INTRODUCTION

1.   I am currently assigned to the ATF Los Angeles Field Division, Santa Ana Field Office, and have been employed by the ATF since September 2005.  In the course of my employment as an ATF Special Agent, I have conducted and assisted numerous investigations involving criminal street gangs, possession of firearms by prohibited persons, possession of stolen firearms, possession of machineguns, the illegal distribution of firearms, burglaries, robberies, and other violent crimes.  In particular, I have conducted numerous serial robbery investigations involving a suspect or suspects committing multiple robberies, most of which were armed, of various businesses over a short period of time.  Additionally, I have investigated several commercial and residential burglaries in the course of my duties.

2.   As part of my current assignment, I work on the ATF Orange County Violent Crime Task Force ("OCVCTF"), which is comprised of federal and local law enforcement investigators focusing primarily on violent crimes and firearm offenses.  As a lead senior investigator on the OCVCTF, I routinely work with various law enforcement agencies in Southern California, and often across the United States, in reviewing and investigating criminal patterns and identifying crimes that are related to each other, specifically robberies.  Since 2016, I have

investigated hundreds of robberies, most of which were committed by armed suspects.  Additionally, I have investigated or assisted in the investigation of over 100 burglaries.

3.   To successfully conduct these investigations, I have used a variety of investigative techniques and resources, including physical and electronic surveillance, wire interceptions, cellular telephone analysis, interviews, the utilization of undercover agents and informants, and the review of various databases and records.  I have interviewed numerous suspects who have committed robberies and burglaries, among other crimes, and have become familiar with the methods and means by which they commit crime and attempt to avoid law enforcement detection.  I have also interviewed witnesses and victims of crimes and participated in in-field lineups and presentations of six-pack photo arrays for suspect identification purposes.

4.   I have received training during the course of my employment as an ATF Special Agent in various topics to include but not limited to: robberies affecting interstate commerce, interview techniques, illegal trafficking of firearms, the utilization of informants, the activities of criminal street gangs, asset forfeiture, and conducting surveillance and wire interceptions.  Through these investigations, my training and experience, and conversations with other experienced agents and law enforcement personnel, I have become familiar with the methods used by individuals to plan and commit robberies, to

smuggle, safeguard, and store firearms, to distribute firearms, and to collect and launder related, illicit proceeds.

5. In the course of my investigations, I routinely utilize cellular technology and records, including cell phone pings, cell site simulators, forensic imaging of seized digital devices, call detail records with and without cell site location information, tower logs, and account history information. Just in the last five years, I have reviewed and analyzed hundreds of thousands of call detail records during various investigations. I regularly obtain and analyze these records and data in the course of my investigations to establish patterns and obtain evidence of the crimes in which I am investigating since almost every person utilizes a cellular telephone during this day and age, and these devices often contain and transmit a wealth of information about a person's activities and communications related to criminal activity.

6. As an ATF Special Agent, I have also participated in numerous federal and state search and arrest warrants involving individuals engaged in conspiracies to commit robberies and burglaries, unlawfully trafficking firearms, stealing firearms, unlawfully possessing firearms, as well as other criminal activity, including controlled substance offenses. Additionally, I have participated in the collection and seizure of hundreds of cellular telephone records, firearms records, and other types of evidence that documents activities in furtherance of robbery conspiracies, firearms crimes, and controlled substance offenses.

## II. PURPOSE OF AFFIDAVIT

7.   This affidavit is made in support of an arrest warrant and criminal complaint charging KEVIN KEITH HARLAN ("HARLAN"), with felon in possession of a firearm, in violation of 18 U.S.C. § 922(g)(1).

8.   The facts set forth in this affidavit are based upon my personal observations, my training and experience, and information obtained from various law enforcement personnel and witnesses.  This affidavit is intended to show merely that there is sufficient probable cause for the requested complaint and warrant and does not purport to set forth all of my knowledge of or investigation into this matter.  Unless specifically indicated otherwise, all conversations and statements described in this affidavit are related in substance and in part only.

## III. STATEMENT OF PROBABLE CAUSE

9.   After reviewing the police reports written by Santa Ana Police Department ("SAPD") Officers Moyao, Esparza, and Garcia regarding an arrest that occurred on May 22, 2022, I have learned the following facts:

**A.   Police Respond to Reports of a Jewelry Store Robbery In Progress**

10.  At approximately 1:10 p.m. on May 22, 2022, SAPD received a call for service regarding an attempted robbery in progress located at Don Roberto's Jewelry Store located at 1619 West 17th Street in the City of Santa Ana.  SAPD patrol officers were dispatched to the scene code three (lights and sirens) due to the severity of the crime.  According to witness accounts,

four suspects were using hammers to smash glass windows and steal jewelry. Due to the store's security features, the suspects were not able to physically gain access to the interior of the store. The suspects instead broke the exterior display case windows to the store and stole jewelry from the outer window cases.

11. Witnesses then observed the suspects flee the scene in two separate vehicles driving together and moving in concert. Witnesses described the vehicles in 911 calls as a Honda Accord and a gray Infiniti with a black bumper.

B. **Officers Locate Robbers' Getaway Cars**

12. While Officer Moyao was responding to the scene and driving eastbound on 17th Street, he observed a Honda Accord with no rear bumper driving westbound on 17th Street. The vehicle matched the description of the suspect vehicle as provided over the dispatch, and Officer Moyao subsequently made a U-turn to catch up to the Honda Accord.[1] As Officer Moyao was attempting to catch up and locate the Honda Accord with the missing bumper, dispatch broadcasted that the second suspect vehicle was a gray Infiniti with a black bumper and was following the Honda Accord in tandem. Due to heavy traffic, Officer Moyao was no longer able to locate the Honda Accord with the missing bumper. However, Officer Moyao did locate a gray Infiniti coupe with a black bumper that matched the description of the second vehicle

---

[1] Notably, based on still images of security footage and witness accounts, the same Honda was involved in a second robbery that same day, in Huntington Beach, approximately one hour prior to the Santa Ana robbery. The Honda is distinct because it is missing a rear bumper.

provided by dispatch.  Officer Moyao located the Infiniti at the intersection of 17th Street/Fairview, approximately 0.6 miles away from Don Roberto's Jewelry Store.

    **C.**    **Officers Conduct a Traffic Stop of One Getaway Car Driven by HARLAN, Perform Protective Pat-Down, and Recover a Loaded Gun**

    13.  Officer Moyao and other SAPD officers conducted a traffic stop on the Infiniti due to the dispatch reports of the vehicle having just been involved in criminal activity.  Due to the severity of the crime and weapons used, SAPD officers conducted a high-risk car stop which entails calling the occupants out of the vehicle from a distance as opposed to approaching the vehicle on foot.  HARLAN exited the Infiniti as the driver and was given commands to walk back towards officers.  Once he was contacted and detained by officers, Officer Esparza conducted a protective pat-down of HARLAN's person for weapons and located a firearm inside his front right shorts pocket.

    **D.**    **HARLAN's Firearm**

    14.  The firearm was a Glock, Model 27, .40 caliber pistol bearing serial number RZC258.  The firearm contained one 9mm magazine which was loaded with fourteen rounds of 9mm Luger ammunition.

    **E.**    **HARLAN Admits Possessing a Gun While Knowing He Had Been Convicted of At Least One Felony**

    15.  Following his arrest, SAPD Detective Sarah Park and I interviewed HARLAN under <u>Miranda</u> at SAPD.  During the interview, HARLAN stated that he possessed the pistol for protection because he had previously been shot.  HARLAN stated that he

purchased the pistol for $900.00 from a person he did not know on the streets in Compton, California. HARLAN stated that he purchased the "Glock 23"[2] with ammunition already in it but that he had not yet fired the gun. HARLAN acknowledged that he knew he was prohibited from possessing firearms based on his previous felony convictions.

F.  **HARLAN's Prior Felony Convictions**

16. Based on my review of HARLAN's criminal history, I learned that HARLAN has the following prior felony convictions:

   a. First degree burglary, in violation of California Penal Code § 459, in California Superior Court, County of Los Angeles, Case Number XNOMA07097301, on or about July 25th, 2017, for which he was sentenced to 2 years in prison.

   b. Vehicle theft, in violation of California Vehicle Code § 10851(a), in California Superior Court, County of Los Angeles, Case Number NA11057301, on or about November 6th, 2018, for which he was sentenced to 32 months in prison.

G.  **Interstate Nexus**

17. On May 25th, 2022, ATF Special Agent Alex Liwienski, who is an interstate nexus expert, told me that the Glock model 27, .40 Smith & Wesson caliber pistol bearing serial number RZC258 is a firearm as defined under 18 USC § 921(a)(3) and was manufactured by Glock G.m.b.H. in Austria. In order for this

---

[2] HARLAN referred to the gun as a Glock 23, however it is actually a Glock Model 27. Based on my training and experience, I know that a Glock 23 is considered a compact pistol and a slightly larger framed Glock pistol than the Model 27 (which is considered a subcompact gun), but both are chambered for .40 caliber ammunition.

firearm to be recovered in California, it had to have move in foreign commerce.

### IV. CONCLUSION

18. For all the reasons described above, there is probable cause to believe that HARLAN has committed a violation of 18 U.S.C. § 922(g)(1) (felon in possession of a firearm and ammunition).

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by telephone on this 27th day of May, 2022.

*Patricia Donahue*
UNITED STATES MAGISTRATE JUDGE